UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

XIRMARIE LABOY-CARDONA,

        Plaintiff,

v.

        Case No.: 23-cv-10960
        Hon. Gershwin A. Drain

EASTER SEALS MICHIGAN,

        Defendant.
_____/

## OPINION AND ORDER DENYING MOTION TO DISMISS [#5]

### I.    INTRODUCTION

On April 25, 2023, Plaintiff Xirmarie Laboy-Cardona filed the instant action against Defendant Easter Seals of Michigan alleging disability discrimination and retaliation under the Americans with Disabilities Act, 42 U.S.C. § 12112 *et seq*. (ADA), as well as disability discrimination and retaliation under the Michigan Persons with Disabilities Act, MICH. COMP. LAWS § 37.1101 *et seq* (PWDA).

Now before the Court is the Defendant's Motion to Dismiss, filed July 6, 2023. Defendant argues Plaintiff's ADA claims are untimely because she did not file suit within 90 days of receiving her right to sue notice from the Equal Employment Opportunity Commission (EEOC), and even if her claims were timely, she fails to state ADA claims upon which relief can be granted. Finally,

Defendant asserts that Plaintiff's PWDA claims must also be dismissed because there is no basis for this Court's supplemental jurisdiction if her federal claims are dismissed.

Plaintiff filed her Response on July 27, 2023, and Defendant filed its Reply on August 11, 2023.  Plaintiff argues that she did in fact timely file this lawsuit because she did not receive notice of her right to sue letter until January 25, 2023, and her Complaint alleges viable discrimination and retaliation claims under the ADA.

Upon review of the parties' filings and the relevant authority, the Court concludes that oral argument will not aid in the disposition of this matter. Accordingly, the Court will resolve Defendant's Motion to Dismiss on the briefs and cancels the hearing. *See* E.D. Mich. L.R. 7.1(f)(2).  For the reasons that follow, the Court denies the Defendant's Motion to Dismiss.

## II.    FACTUAL BACKGROUND

Plaintiff was hired by Defendant in 2019 as a Central Appointment Scheduler.  Her position's responsibilities consisted of communicating with patients over the phone to set up medical appointments.  Plaintiff completed her work satisfactorily and regularly met, or exceeded, expectations.

However, things took a turn on November 4, 2020 when Plaintiff became infected with the COVID-19 virus.  Plaintiff's supervisor, Princess Miller,

authorized Plaintiff to work five days from home and deducted the rest of the days from Plaintiff's hours bank.  Because Plaintiff did not test negative for the virus until November 21, 2020, she went without pay for roughly a week.  Thereafter, on February 3, 2021, Plaintiff's daughter tested positive for the COVID-19 virus.  At the time, public schools in Michigan had very strict policies regarding school attendance when a student tested positive for the virus.  Plaintiff reached out to Ms. Miller and asked if she could work from home because she had no other caretaker for her daughter.  Ms. Miller denied Plaintiff's request to telework.  Plaintiff had to take another week off from work.

For the following months, Ms. Miller continuously denied Plaintiff's request to telework.  She also forbade Plaintiff from speaking with Wendy Standifer, Ms. Miller's supervisor, when Plaintiff expressed that she wanted to discuss her telework requests with someone else.  By June of 2021, Plaintiff told Ms. Miller that she believed she was being mistreated and her well-being were suffering.  Rather than change her attitude, Ms. Miller's treatment became worse.  Ms. Miller apparently viewed Plaintiff differently and made assumptions about Plaintiff's mental health.

On June 10, 2021, Ms. Miller unexpectedly transferred Plaintiff to a different work assignment, specifically she was assigned to work the window, which is exclusively client facing work.  Even though the employee who currently

worked the window was about to go on maternity leave, she was not yet at that point and confused as to why the transition occurred prematurely.

The change in work assignment led to further decline in Plaintiff's well-being. On July 22, 2021, Plaintiff met with Ms. Standifer due to an investigation brought against Ms. Miller for creating a hostile work environment. In that meeting, Plaintiff told Ms. Standifer that Ms. Miller had denied her paid leave due to COVID-19 and denied her request to work from home. Ms. Standifer said she would investigate further. She also advised Plaintiff that she could have received telework accommodations before, and that it was still company policy that any employee could request to telework. That very evening, Ms. Miller retaliated against the Plaintiff by informing her at 9:16 p.m. that Plaintiff had received a warning for using swear words in front of a client. Plaintiff was written up for this behavior, however she disputed that she had used a swear word in front of a client. Plaintiff was not given an opportunity to defend herself. Plaintiff alleges other employees used vulgar language at work and were never written up.

The change to Plaintiff's work assignment allowed Ms. Miller to regularly harass the Plaintiff because Ms. Miller sat right behind her and watched everything Plaintiff did. The stress and pressure became too much for the Plaintiff and she eventually suffered a panic attack while at work. She had to be hospitalized and

was treated for extreme anxiety. Plaintiff was diagnosed with an anxiety disorder and began treatment for her condition.

By August of 2021, Plaintiff's doctor would not approve her to return to work in an in-person capacity. Plaintiff made several requests for accommodations but was repeatedly denied even though other employees were regularly approved for telework. Defendant required Plaintiff to immediately return to work, disregarding her doctor's advice. Defendant did not take Plaintiff's requests seriously and she was threatened that if she did not show up to work, she would be terminated. Plaintiff was eventually terminated on November 15, 2021. Her termination was for failure to report to work, with no mention of her requested accommodations. Plaintiff suffers from extreme anxiety as a result of the treatment she endured while employed with Defendant. She brings disability discrimination and retaliation claims under the ADA and the PWDA.

### III. LAW & ANALYSIS

#### A. Standard of Review

Federal Rule of Civil Procedure12(b)(6) allows the court to make an assessment as to whether the plaintiff has stated a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is

and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957). Even though the complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007) (quoting *Bell Atlantic*, 550 U.S. at 555).

The court must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether plaintiff's factual allegations present plausible claims. To survive a Rule 12(b)(6) motion to dismiss, plaintiff's pleading for relief must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations and quotations omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. at 678. "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

6

misconduct, the complaint has alleged–but it has not 'show[n]'– 'that the pleader is entitled to relief.'" *Id.* at 679.

### B. Timeliness

In order to bring a lawsuit pursuant to the ADA, a plaintiff must (1) timely file a charge of employment discrimination with the EEOC, and (2) receive and act upon the EEOC's notice of the "right to sue" letter. *See Granderson v. Univ. of Michigan*, 211 F. App'x 398, 400 (6th Cir. 2006) (citations omitted). A plaintiff seeking relief under the ADA must obtain a right to sue letter from the EEOC, and then file suit within 90 days after receiving it. *See Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 322 (6th Cir. 2012) (noting that "[t]he ADA explicitly cross references and adopts Title VII's enforcement section, including 'powers, remedies and procedures.'"); *see also Mayers v. Sedgwick Claims Mgmt., Servs., Inc.*, 101 F. App'x 591, 593 (6th Cir. 2004) (same).

Defendant argues that the electronic submission of the right to sue notice occurred on January 6, 2023, thus Plaintiff had until April 6, 2023 to initiate the instant lawsuit. Because Plaintiff did not file her lawsuit until April 25, 2023, Defendant argues her federal claim must be dismissed.

Here, the Court agrees with Plaintiff that Defendant's timeliness argument is premature. "[A] statute of limitations challenge is 'susceptible to resolution on a motion to dismiss' in cases where a 'plaintiff affirmatively pleads h[er]self out of

7

court.'" *Mingo v. Fed Community*, 484 F.Supp.3d 506, 510 (E.D. Mich. 2020) (quoting *Rembisz v. Lew*, 590 Fed.Appx. 501 (6th Cir. 2014). "Where a plaintiff does not affirmatively plead h[er]self out of court, however, a statute of limitations challenge is prematurely raised in a motion to dismiss." *Id*. In her Complaint, Plaintiff alleges that she did not receive notice of her right to sue until January 25, 2023, thus she has not pled herself out of Court.

In any event, Defendant's argument rests on the erroneous assumption that Plaintiff ignored a notification from the EEOC or failed to open a link from the EEOC. However, in this case, the EEOC did not provide Plaintiff with an email including a link to the Right to Sue letter. Rather, an EEOC investigator, Anthony Watts, had to directly provide Plaintiff with the Right to Sue Notice when she contacted him after discovering a discrepancy on the EEOC's Portal and an inability to access further details. On January 16, 2023, Plaintiff's counsel sent an email to Mr. Watts indicating that, "[t]he EEOC portal is showing the charge is closed. However, when I click on the case number, it says the matter is still under investigation. We have yet to receive a Right to Sue in this matter. Could I please get an update?" ECF No. 7, PageID.104. Defendant's argument that, at a minimum, Plaintiff knew her case had been closed as of January 16, 2023 is not well taken. A review of Plaintiff's email shows that she was unsure of the status of her EEOC charge because the Portal provided conflicting information.

While there is a presumption of actual delivery and receipt of the Right to Sue letter, a plaintiff can rebut that presumption with proof that she did not receive notification within the proper time. *See Mingo*, 484 F.Supp.3d at 508 (citing *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552 (6th Cir. 2000)). Defendant provides no authority that is on point with the facts here, nor is any of the Defendant's authority controlling on this Court. *See McNaney v. Sampson and Morris Grp., Inc.*, No. 21-1809, 2022 U.S. Dist. LEXIS 6308 (W.D. Pa. April 5, 2022) (the plaintiff's counsel did receive an email with an accessible link from the EEOC); *Paniconi v. Abington Hospital-Jefferson Health*, 604 F.Supp.3d 290 (E.D. Pa. May 24, 2022) (the plaintiff received an email); *Lax v. Mayorkas*, 20 F.4th 1178, 1181-82 (7th Cir. 2021) (the plaintiff's counsel had issues opening the letter after receiving the email link from the EEOC); *Boyd v. Monroe City Hall*, No. 3:20-CV-01473, 2021 U.S. Dist. LEXIS 68854 (W.D. La. Mar. 8, 2021) (the EEOC's email including the link was sent to the plaintiff's spam folder); *Cerroni v. Smith's Food Drug Cts., Inc.*, 2023 U.S. Dist. LEXIS 3467466 (U.S.D.C. Utah, May 15, 2023)(counsel received an EEOC email including a link to the Right to Sue notice).

Finally, Defendant's assertion that Plaintiff must include an affidavit or other admissible evidence to rebut the presumption of receipt of the Notice of Right to Sue letter is similarly not well taken. As an initial matter, the Court notes

that Defendant does not attach a copy of the unpublished opinion and order it relies upon contrary to this Court's local rules. *See Schmidlin v. Uncle Ed's Oil Shoppes, Inc.*, No. 2:13-cv-10552, 2014 U.S. Dist. LEXIS 100641 (E.D. Mich. Jul. 24, 2014). Moreover, *Schmidlin* was decided on summary judgment, which requires the non-movant to come forward with admissible evidence to establish a question of material fact exists for a jury's determination. Defendant's reliance on this case further establishes Defendant has prematurely raised its timeliness argument. Defendant's Motion to Dismiss will not be granted on timeliness grounds.

## C. ADA Discrimination and Retaliation

The Americans with Disabilities Act prohibits discrimination "against a qualified individual on the basis of disability in regard to ... the hiring, advancement, or discharge of employees ... and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Discrimination includes an employer's failure to provide reasonable accommodation for an employee's disability. A prima facie case of discrimination under the ADA requires the plaintiff to show that (1) she is disabled, (2) she is otherwise qualified for the job, with or without reasonable accommodation, and (3) she was discriminated against because of her disability. *Latowski v. Northwoods Nursing Ctr.*, 549 F. App'x 478, 486 (6th Cir. 2013). A person is "disabled" under the ADA if she has "(A) a physical or mental impairment that substantially limits one or more of the major

life activities ...; (B) a record of such an impairment; or (C) [is] regarded as having such an impairment." § 12102(1). As a threshold matter, a plaintiff "need not prove that they suffered an adverse employment action separate from the failure of the employer to reasonably accommodate the employee." *Morrissey v. Laurel Health Care Co.*, 946 F.3d 292, 299 (6th Cir. 2019).

A prima facie case of retaliation under the ADA requires allegations that "(1) she engaged in protected activity under the ADA [], (2) the defendant knew of the protected activity, (3) the defendant took an adverse action against the plaintiff, and (4) there was a causal connection between the adverse action and the plaintiff's protected activity." *Kirilenko-Ison v. Bd. Of Educ. of Danville Independent Schools*, 974 F.3d 652, 661 (6th Cir. 2020), citing *A.C. ex rel. J.C. v. Shelby Cty. Bd. of Educ.*, 711 F.3d 687 (6th Cir. 2013).

In its Motion to Dismiss, Defendant takes issue with Plaintiff's citation to § 12111(2) and § 12131(2) and argues that the latter statute is inapplicable to Defendant because Easter Seals is not a "public entity" under § 12131(1). While Plaintiff concedes her error in citing to § 12131(2), such an error does not warrant dismissal of her action. "The Federal Rules of Civil Procedure provide for a liberal system of notice pleading." *E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001). A review of Plaintiff's complaint reveals that she has stated viable ADA claims based on her employer's discrimination and retaliation against her.

11

However, in order to dispel any confusion, the Court will require Plaintiff to submit an Amended Complaint which does not include citation to § 12131(2).

Here, the Court concludes that Plaintiff has sufficiently pled discrimination under the ADA. She alleges that she suffered an anxiety attack while at work, was diagnosed with anxiety disorder and had to take emergency medical leave. She further asserts that she was qualified for her job and was discriminated against when her employer refused to provide her with the reasonable accommodation of working from home, and ultimately terminated her employment.

She has also properly alleged an ADA retaliation claim. She continuously requested a reasonable accommodation from Defendant, was ignored and terminated. Defendant relies on *Rorrer v. City of Stow*, 743 F.3d 1025, 1038 (6th Cir. 2014) to support its claim that Plaintiff's Complaint should be dismissed pursuant to Fed. R. Civ. P 12(b)(6). However, the *Rorrer* decision involves a Motion for Summary Judgment, not a Motion to Dismiss. Defendant once again prematurely raises arguments properly handled in a Motion for Summary Judgment, once discovery has been concluded.

Lastly, because Plaintiff has plausibly alleged timely and viable ADA claims, her state law PWDA claims are properly before this Court.

IV. **CONCLUSION**

Accordingly, for the reasons articulated above, Defendant's Motion to Dismiss [#5] is DENIED.

SO ORDERED.

Dated: November 20, 2023 /s/Gershwin A. Drain
GERSHWIN A. DRAIN
United States District Judge

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
November 20, 2023, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager