UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

XIRMARIE LABOY-CARDONA,

    Plaintiff,

v.

EASTER SEALS MICHIGAN,

    Defendant.

Case No. 23-cv-10960

Hon. Gershwin A. Drain

_____

Fabiola A. Galguera (P84212)
NACHTLAW, P.C.
Attorney for Plaintiff
501 Avis Dr., Ste. 3
Ann Arbor, MI 48108
(734) 663-7550
fgalguera@nachtlaw.com

_____

# FIRST AMENDED COMPLAINT

Plaintiff, Xirmarie Laboy-Cardona, by and through her attorneys, NachtLaw, P.C., files her First Amended Complaint against Easter Seals Michigan (hereinafter referred to as "ESM") as follows:

## PARTIES, JURISDICTION, AND VENUE

1.     Plaintiff, Xirmarie Laboy-Cardona, is a woman, a mother of two, current resident of Puerto Rico, and a former employee of Defendant.

2.     Defendant, ESM, is a Michigan domestic nonprofit corporation doing business in and with its resident agent located in Auburn Hills, Michigan, within this

1

judicial district.

3. This Court has federal question jurisdiction pursuant to the Americans with Disabilities Civil Rights Act, and 28 U.S.C. 1331.

4. Supplemental jurisdiction over Plaintiff's state law claims is proper pursuant to 28 U.S.C. 1367 as they arise from the same case and controversy.

5. Venue in this Court is proper pursuant to 28 U.S.C. 1391 as a substantial part of the events and omissions giving rise to this Complaint occurred in Auburn Hills, Oakland County, Michigan, within this judicial district.

6. Plaintiff filed a timely Charge of Discrimination with the Equal Employment Opportunity Commission alleging disability discrimination in violation of the Americans with Disabilities Act and received her Notice of Right to Sue on January 25, 2023. She brings these claims within 90 days of her receipt of her Notice of Right to Sue.

## **GENERAL ALLEGATIONS**

7. Plaintiff was hired by Defendant ESM in 2019 as a Central Appointment Scheduler.

8. As a Central Appointment Scheduler, Plaintiff was in charge of communicating with patients over the phone to set up medical appointments.

9. To do her job , Plaintiff only needed a phone and a laptop.

10. Plaintiff completed her work satisfactorily and regularly met, even exceeded, expectations.

11. Plaintiff did not have issues with Defendant ESM until the end of November 2020, when she first became infected with COVID-19.

12. At the time, Plaintiff's supervisor was Ms. Princess Miller.

13. Until this moment, Ms. Miller had only given Plaintiff positive feedback on her work.

14. On to about November 4, 2020, Plaintiff tested positive for COVID-19.

15. She immediately reported to Ms. Miller and requested to work from home for the required quarantined period.

16. Her doctor has requested that she immediately quarantine and stay away from others due to the risk that others would be infected.

17. Ms. Miller did not allow Plaintiff to do so.

18. She authorized Plaintiff for only five days of telework and deducted the rest of the days from Plaintiffs's hours bank.

19. Plaintiff did not test negative for COVID- 19 until about November 21, 2020, affecting her return date substantially.

20. Ms. Miller repeatedly denied Plaintiff the ability to telework.

21. Plaintiff's position allowed her to work completely from home.

22. Her work did not require face-to-face interaction with patients.

23. All she needed was her laptop and phone.

24. Furthermore, Ms. Miller gave Plaintiff false and inaccurate information about the processes for telework.

25. Ms. Miller represented to Plaintiff that she could not request telework from Defendant ESM.

26. Plaintiff would find out about seven months later that Ms. Miller was intentionally misleading her.

27. Plaintiff, upon her return to Defendant ESM, went about doing her job diligently and as required.

28. Plaintiff had her following negative experience with Ms. Miller in February.

29. Plaintiff's daughter fell ill and began to exhibit COVID-19 symptoms on or about February 3, 2021.

30. At the time, public schools had very strict policies regarding school attendance when COVID-19 symptoms were exhibited.

31. Plaintiff's daughters were not allowed to attend school.

32. Additionally, there were no independent caretakers willing to watch the girls due to the fear that the virus would spread.

33. Plaintiff reached out to Ms. Miller and informed her that she could not return to work until her daughters tested negative because that was the requirement

of childcare providers.

34. Ms. Miller once again denied Plaintiff's requests for telework.

35. Plaintiff had to take a week off.

36. Plaintiff did not understand why she was being denied all of her requests; she was aware that other employees were allowed to regularly work from home.

37. For the following months, any time Plaintiff made a request for telework accommodations, Ms. Miller denied the requests with no explanation or reason.

38. Ms. Miller took it a step further and expressly forbade Plaintiff from communicating with Wendy Standifer, one of Ms. Miller's supervisors, when Plaintiff expressed that she wanted to discuss her requests with someone else.

39. Plaintiff began to feel personally affected by Ms. Miller's actions; she was feeling the pressure of having to sacrifice her work time under circumstances she could not control.

40. Early in June of 2021, Plaintiff finally told Ms. Miller that she felt mistreated and that her emotional well-being was suffering.

41. Ms. Miller expressed no sympathy.

42. In fact, the treatment became worse.

43. Ms. Miller now perceived Plaintiff differently, making assumptions about her mental health.

44. After Plaintiff notified Ms. Miller about the decline in her well-being, Ms. Miller began to retaliate against Plaintiff.

45. On or about June 10, 2021 Ms. Miller unexpectedly moved Plaintiff to a different work assignment: working the window, which is exclusively client-facing work.

46. The position previously held by pregnant employee

47. There was a set timeline for transitioning this employee out from the position so she could go on maternity leave.

48. The plan was abandoned however and the timeline moved up with no explanation.

49. Even the employee who was working the window was confused.

50. This led to a further decline in Plaintiff's well-being; Ms. Miller was actively interfering with her ability to succeed at work.

51. On or about July 22, 2021, Plaintiff met with Ms. Standifer due to an investigation brought against Ms. Miller for creating a hostile work environment.

52. In that meeting, Plaintiff expressed to Ms. Standifer that Ms. Miller had denied her paid leave due to COVID-19 and had denied her telework accommodations.

53. At that time, Ms. Standifer indicated that she would investigate further.

54. During this meeting, Ms. Standifer informed Plaintiff that she could have received telework accommodations before and that, as of that day, it was still a request that could be made by all employees.

55. That same night, Ms. Miller retaliated against Plaintiff for reporting Ms. Miller's behavior.

56. At 9:16 PM, Plaintiff received a warning for some alleged inappropriate work behavior.

57. Ms. Miller claimed that Plaintiff cussed in front of a patient on July 19, 2022.

58. Plaintiff was only written up for this alleged incident - which she disputed - after speaking to Ms. Standifer.

59. Plaintiff was not given a proper opportunity to defend herself against this write-up.

60. Notably, while other employees constantly cussed at work, no one ever written up

61. The change in the job position allowed Ms. Miller to regularly harass Plaintiff.

62. While Plaintiff sat at the window, Ms. Miller sat right behind her and watched everything she did.

63. The stress and pressure became too much for Plaintiff; she was under so much stress she had a panic attack while at work.

64. She had to be hospitalized and treated for extreme anxiety.

65. From that day further, Plaintiff was diagnosed with an anxiety disorder and began treatment for a condition she did not have before.

66. Plaintiff began to regularly receive therapy.

67. Starting August of 2021, Plaintiff had to request emergency medical leave; her doctor would not approve her to return for in-person work.

68. She could, however, work remotely.

69. Plaintiff made several requests for accommodations which would allow her to work from home.

70. Despite other employees being regularly approved for telework, Plaintiff was repeatedly denied.

71. Defendant ESM was requiring Plaintiff to return to work immediately, completely disregarding the advice from her medical providers.

72. Instead of having Plaintiff's requests taken seriously, she was met with threats that unless she showed up to work, she would be terminated.

73. Plaintiff tried to work with Defendant ESM to be properly accommodated until she was terminated on November 15, 2021.

74. The termination is allegedly for failure to report to work without any acknowledgment for the accommodations she was in the process of requesting.

75. As a result of the treatment Plaintiff experienced, she suffers from extreme anxiety.

76. It currently affects her ability to seek work.

## COUNT I
## DISABILITY DISCRIMINATION IN VIOLATION OF
## THE AMERICAN WITH DISABILITIES ACT, 42 U.S.C. 12112 et seq.

77. Plaintiff incorporates the preceding paragraphs as if fully restated herein.

78. At all relevant times, Defendant ESM was Plaintiff's employer

79. Plaintiff is disabled.

80. Furthermore, certain actions were taken by Defendant ESM before these diagnosis because it regarded Plaintiff as disabled.

81. At all relevant times, Plaintiff was qualified to perform the essential functions of her job with or without reasonable accommodation.

82. Defendant ESM subjected Plaintiff to adverse employment actions, including terminating her employment.

83. Defendant ESM's actions were motivated by unlawful discrimination against Plaintiff because of her disability.

84. But for Plaintiff's disability, Defendant ESM would not have subjected her to such adverse actions.

85. Defendant ESM's actions in violation of the Americans with Disabilities Act were willful.

## COUNT II
## DISABILITY DISCRIMINATION IN VIOLATION OF
## <u>THE PERSONS WITH DISABILITIES CIVIL RIGHTS, M.C.L. 37.1101 et seq.</u>

86. Plaintiff incorporates the preceding paragraphs as if fully restated herein.

87. At all relevant times, Defendant ESM was an employer and Plaintiff was an employee covered by and within the meaning of the Persons with Disabilities Civil Rights Act.

88. Plaintiff had a disability within the meaning of MCL 37.1103(d) on account of her anxiety disorders, which substantially limited her major life activities including sleeping, thinking, concentrating, and interacting with others.

89. At all relevant times, Plaintiff was qualified to perform the essential functions of her job with or without reasonable accommodation.

90. Defendant ESM subjected Plaintiff to adverse employment actions, including terminating her employment.

91. Defendant ESM's actions were motivated by unlawful discrimination against Plaintiff because of her disability.

92. But for Plaintiff's disability, Defendant ESM would not have subjected her to such adverse actions.

93. Defendant ESM's actions in violation of the PWDCRA were willful.

## COUNT III
## DISABILITY RETALIATION IN VIOLATION OF
## THE AMERICAN WITH DISABILITIES ACT, 42 U.S.C. 12112 et seq.

94. Plaintiff incorporates the preceding paragraphs as if fully restated herein.

95. At all relevant times, Defendant ESM was Plaintiff's employer.

96. Plaintiff is disabled.

97. Plaintiff engaged in protected activity, including repeated requests for reasonable accommodations.

98. Defendant ESM subjected Plaintiff to adverse employment actions, including terminating her employment.

99. Defendant ESM's actions were motivated by her requests for reasonable accommodations associated with her disability.

## COUNT IV
## DISABILITY RETALIATION IN VIOLATION OF
## THE PERSONS WITH DISABILITIES CIVIL RIGHTS, M.C.L. 37.1101 et seq.

100. Plaintiff incorporates the preceding paragraphs as if fully restated herein.

101. At all relevant times, Defendant ESM was an employer and Plaintiff was an employee covered by and within the meaning of the Persons with Disabilities Civil Rights Act.

102. Plaintiff had a disability within the meaning of MCL 37.1103(d) on account of her anxiety disorders, which substantially limited her major life activities including sleeping, thinking, concentrating, and interacting with others.

103. Plaintiff engaged in protected activity, including repeated requests for reasonable accommodations.

104. Defendant ESM subjected Plaintiff to adverse employment actions, including terminating her employment.

105. Defendant ESM's actions were motivated by her requests for reasonable accommodations associated with her disability.

## DAMAGES

106. As a direct and proximate result of Defendant ESM's actions, Plaintiff has been placed in financial distress and has suffered a loss of earnings and benefits and impairment of her earning capacity and ability to work and will so suffer in the future.

107. As a direct and proximate result of Defendant ESM's actions, Plaintiff has suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation and embarrassment, and will so suffer in the future.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

## RELIEF REQUESTED

WHEREFORE, Plaintiff Xirmarie Laboy-Cardona prays that this Honorable Court grant the following relief:

a) Declare that the aforementioned practices and actions of Defendant ESM constitute unlawful employment practices in violation of the Elliott Larsen Civil Rights Act and Persons with Disabilities Civil Rights Act;

b) Award Plaintiff all lost wages, past and future, to which she is entitled;

c) Award Plaintiff compensatory damages;

d) Award Plaintiff punitive damages;

e) Award Plaintiff reasonable attorney's fees, costs, and interest; and

f) Award such other relief as this Court deems just and proper.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against Defendant ESM and all relief requested in this Complaint.

Respectfully submitted,
NACHTLAW, P.C.

/s/ Fabiola A. Galguera
Fabiola A. Galguera (P84212)

Dated: December 6, 2023

## **CERTIFICATE OF SERVICE**

    I hereby certify that on December 6, 2023, I electronically filed the foregoing instrument with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

/s/ Fabiola A. Galguera